FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Feb 05, 2025

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>KELLY BALLES,<br><br>Defendant. | No. 1:24-CR-02010-MKD<br><br>ORDER DENYING DEFENDANT'S MOTION TO DISMISS AND GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO SUPPRESS<br><br>**ECF Nos. 41, 43** |

On January 29, 2025, the Court held a pretrial conference in this matter. Defendant appeared in custody and was represented by AFD Craig Webster. AUSA Benjamin Seal represented the United States.

The Court heard argument on Defendant's Motion to Dismiss, ECF No. 43, and Motion to Suppress, ECF No. 41. For the reasons stated on the record and explained below, the Court denies the Motion to Dismiss and grants in part and denies in part the Motion to Suppress.

ORDER – 1

**BACKGROUND**

Defendant is charged with unlawful possession of a firearm, in violation of 18 U.S.C. § 922(g)(1) (Count 1), possession with intent to distribute 50 grams or more of actual (pure) methamphetamine, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(A)(viii) (Count 2), and possession of a firearm in furtherance of a drug trafficking offense, in violation of 18 U.S.C. § 924(c)(1)(A)(i) (Count 3). ECF No. 5.

**DISCUSSION**

**A. Motion to Dismiss**

Defendant moves to dismiss Count 1 (felon in possession of firearm) under *N.Y. State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1 (2022) and *United States v. Duarte*, 101 F.4th 657 (9th Cir. 2024), *vacated pending reh'g en banc*. ECF No. 43.

The Court previously considered facial and as-applied challenges to 18 U.S.C. § 922(g)(1) under *Bruen* and concluded that Section 922(g)(1) was constitutional. *United States v. Aguilar-Cruz*, No. 23-CR-6024, 2024 WL 2064053 (E.D. Wash. May 8, 2024), ECF No. 62. Defense counsel has identified a limited number of cases that have been decided since the Court issued its ruling in *Aguilar-Cruz*, none of which materially change the Court's analysis or ultimate conclusion on this issue. For example, the Supreme Court's June 2024 decision in

ORDER – 2

1  *United States v. Rahimi* concerned a constitutional challenge to a different offense,
2  18 U.S.C. § 922(g)(8).  602 U.S. 680 (2024).  Additionally, Defendant argued at
3  the hearing that *Rahimi* is distinguishable from his circumstances because his
4  disarmament under Section 922(g)(1) amounts to a permanent ban, whereas
5  disarmament under Section 922(g)(8) is temporary.  *See* ECF No. 54.
6      Accordingly, for the same reasons detailed in *Aguilar-Cruz*, the Court denies
7  Defendant's Motion to Dismiss Count 1.
8   **B. Motion to Suppress**
9      Defendant moves to suppress the evidence seized from his arrest and the
10 subsequent search of his person and vehicle on December 2, 2023.  ECF No. 41.
11 He first contends that his arrest and the search of his person incident to arrest were
12 unlawful because his arrest was based on a warrant for a prior conviction affected
13 by *State v. Blake*, 481 P.3d 521 (Wash. 2021).  *Id.* at 14-16.  Second, he argues that
14 the search of the truck did not fall within a valid exception to the warrant
15 requirement.  *Id.* at 17-33.
16     *1.  Factual History of Arrest and Search*
17     At about 8:20 p.m. on December 2, 2023, police dispatch logged a report of
18 a suspicious vehicle, possibly broken down, with two men nearby attempting to
19 flag for help.  ECF No. 41-1 at 1, ECF No. 41-2 at 3.  Yakima County Sheriff's
20 Sergeant J. Panattoni and Deputy W. Graybael responded to find a truck parked at

ORDER – 3

the intersection of North White Swan Road and Branch Road. ECF No. 41-2 at 3. The truck was registered to a "William Betts." *Id.* Deputy Graybael saw Defendant slumped over the steering wheel in the driver's seat through the driver's side window. *Id.* Sgt. Panattoni roused Defendant by shining his flashlight on Defendant and speaking to him. ECF No. 41-3 at 1.

Defendant stated he was waiting for someone to tow him to White Swan. ECF No. 41-3 at 1. He said he had borrowed the truck from a friend, Rick Martinez. *Id.* at 2. He said he had lost his wallet and had no ID, but identified himself as "Thane Balles," with a birthdate of March 10, 1967.[1] *Id.* at 1; ECF No. 57 at 6-8. However, Sgt. Panattoni noted Defendant paused before providing his birth year, and he paused again when asked to confirm his age. ECF No. 41-3 at 1; ECF No. 57 at 8. While attempting to verify the information Defendant had provided, Sgt. Panattoni located a profile for a "Thane Balles," with a nonlocal address, who had been involved in a recent case with a "Kelly Balles." ECF No. 57 at 8. Sgt. Panattoni reviewed the profile photo for "Kelly Balles" and recognized that individual as the person in the truck. *Id.* at 8-9. "Thane" is Defendant's brother. ECF No. 41-3 at 1.

---

[1] This was not Defendant's correct birthdate. *See* ECF No. 29 at 2.

ORDER – 4

1        Sgt. Panattoni saw Defendant was under bench warrant status in relation to his supervision by the Washington Department of Corrections (DOC) and asked dispatch to confirm the warrant. *Id.*; ECF No. 42 (Exhibit F, video recording at approx. 02:00); ECF No. 57 at 9. He notified Deputy Graybael of Defendant's true name, then removed Defendant from the truck and detained him in handcuffs. ECF No. 41-3 at 1; ECF No. 42 (Exhibit F, video recording at approx. 02:15); ECF No. 57 at 9. Sgt. Panattoni asked Defendant for his address, calling him "Kelly"; Defendant paused a moment before replying, "Who?" ECF No. 41-3 at 1; ECF No. 42 (Exhibit F, video recording at approx. 03:40); ECF No. 57 at 10. Deputy Graybael confronted Defendant about providing a false name, and Defendant admitted he was, in fact, Kelly Balles. ECF No. 41-2 at 3.

       Deputy Graybael placed Defendant under arrest based on the confirmed DOC warrant and searched him incident to arrest. ECF No. 41-2 at 3; *see also* ECF No. 54. During the search, Defendant stated that the truck had overheated, that other individuals had helped him push it to that area, and that he had someone coming to tow it. ECF No. 42 (Exhibit F, video recording at approx. 04:45). Deputy Graybael found a pistol in Defendant's right jacket pocket and removed it. ECF No. 41-2 at 3; ECF No. 42 (Exhibit G, video recording at approx. 07:55). Deputy Graybael pointed out Defendant had denied having any weapons on him before the search; Defendant replied, "I totally forgot all about it." ECF No. 41-2

ORDER – 5

at 3; ECF No. 42 (Exhibit G, video recording at approx. 07:55); ECF No. 41-3 at 1. Deputy Graybael asked Defendant if he was sure there was nothing in the gun; Defendant affirmed. ECF No. 42 (Exhibit G, video recording at approx. 08:25); ECF No. 41-3 at 1. However, Deputy Graybael discovered a live bullet in the chamber and additional live rounds in the magazine. ECF No. 41-2 at 3; ECF No. 57 at 11. Sgt. Panattoni confirmed Defendant's criminal history, which included convictions for second degree assault in 1997, second degree burglary in 2012 and 2023, second degree theft in 1986, controlled substance manufacture/deliver/possession with intent to distribute in 2004, forgery in 2004, and possession of a controlled substance in 2019, in addition to Defendant's active DOC supervision. ECF No. 41-3 at 2.

  Deputy Graybael also removed a significant amount of cash, lighters, and flashlights from Defendant's pockets. ECF No. 41-2 at 3; ECF No. 41-3 at 1. Deputy Graybael also located a wallet, which Defendant confirmed was his, despite having earlier claimed to have lost his wallet. ECF No. 42 (Exhibit G, video recording at approx. 12:20); ECF No. 57 at 7, 34-35.

  Sgt. Panattoni requested a K9 unit based on Defendant's DOC warrant status, the cash found on his person, and his known involvement with drug possession. ECF No. 41-3 at 2. While retrieving the VIN from the truck, Sgt. Panattoni observed that the truck had been spraypainted and that the

ORDER – 6

1  dashboard VIN was obscured.  *Id.*  The K9 unit arrived, and the K9 sniff yielded

2  negative results.  *Id.*

3        Sgt. Panattoni decided to have the truck towed due to the truck's long-

4  expired registration (as of June 2020); Defendant's arrest; Defendant's indications

5  that the truck was broken down and that a tow was on the way; that the owner did

6  not answer when called and had previously reported a vehicle theft; and that the

7  truck might impede traffic where it was currently parked.  *Id.*; ECF No. 41-1 at 1

8  ("VM left for RO of Trk NN 40441"); *see also* Ex. H at 47:50 (Sgt. Panattoni

9  mentioning the expired registration).

10        Sgt. Panattoni and Deputy Graybael searched the truck and discovered

11  additional cash and a small black bag containing a clear baggie of suspected

12  methamphetamine.  ECF No. 41-3 at 2; ECF No. 42 (Exhibit I, video recording at

13  approx. 00:30).

14        *2. Discussion*

15        "The government bears the burden of proving that a warrantless search or

16  seizure falls within an exception to the warrant requirement."  *United States v. Job*,

17  871 F.3d 852, 860 (9th Cir. 2017) (citing *United States v. Scott*, 705 F.3d 410, 416

18  (9th Cir. 2012)).  "The exclusionary rule generally applied in Fourth Amendment

19  cases requires courts to suppress any evidence obtained as a 'direct result of an

20  illegal search or seizure,' as well was 'evidence later discovered and found to be

ORDER – 7

derivative of an illegality, the so-called fruit of the poisonous tree.'" *United States v. Ngumezi*, 980 F.3d 1285, 1290 (9th Cir. 2020) (quoting *Utah v. Strieff*, 579 U.S. 232, 237 (2016)).

> i. Defendant's Arrest

Defendant was arrested pursuant to an active bench warrant related to his DOC supervision—namely, for escape from community custody. ECF No. 41-3 at 2. Defendant nevertheless contends that his arrest was illegal, as he was on DOC supervision for a Washington drug possession conviction that was overturned by *Blake*. ECF No. 41 at 14-16, 21-22.

Defendant raised this argument before the Washington Court of Appeals, in relation to his arrest under similar circumstances in 2021. *See State v. Balles*, 556 P.3d 698 (Wash. Ct. App. 2024). In that case, Defendant was under DOC supervision for a 2014 conviction for drug possession. *Id.* at 700. Defendant failed to report as required, and a bench warrant issued. *Id.* In March 2021, about one month after *Blake* was decided, law enforcement served the arrest warrant on Defendant at his home, where he was found in possession of methamphetamine, ammunition, a stolen firearm, and indicia of drug distribution. *Id.* at 700-01. The Court of Appeals rejected his contention that the arrest warrant had been invalidated by *Blake*:

> A defendant convicted of a crime later deemed unconstitutional and invalidated on due process grounds is

ORDER – 8

> entitled to have their conviction vacated. . . . But a conviction under RCW 69.50.4013(1) is not automatically vacated or invalidated. . . . Rather, it has long been understood that the subject of a court order must comply with the order until relieved of the obligation to do so. . . . In the civil context, "[a] final judgment, ... based upon an erroneous view as to the constitutionality of a statute, is valid and binding until regularly reversed or set aside." . . . The same is true in the criminal context. An offender held in custody "under process issued on the final judgment ... is not entitled to his discharge ... unless such process or judgment be void. . . When faced with a potentially invalid court order, the solution is not to willfully violate it. *Instead, the defendant must challenge his original judgment and sentence in a timely manner and comply with the terms of the order until it is otherwise overturned.*

*Id.* at 704 (citations omitted) (emphasis added). In other words, Defendant "remained on community custody and subject to the terms of his judgment and sentence until a court issued an order vacating his 2014 conviction" pursuant to *Blake*, which did not occur until August 2021. *Id.*

Here, Defendant was on DOC supervision for a 2019 drug conviction, and this conviction was not dismissed pursuant to *Blake* until December 15, 2023—i.e., about two weeks after his arrest in this matter. *See* ECF No. 13 at 12. Defendant remained subject to the terms of his 2019 judgment and sentence until that conviction was vacated on December 15, 2023. *See Balles*, 556 P.3d at 704. Moreover, "the exclusionary rule does not apply when the police conduct a search in 'objectively reasonable reliance' on a warrant later held invalid." *Davis v. United States*, 564 U.S. 229, 238-39 (2011) (quoting *Leon v. United States*, 468

ORDER – 9

U.S. 897, 922 (1984)). Defendant has not established that the arresting officers' reliance on the DOC warrant was not objectively reasonable, even after *Blake*.

Moreover, by the time of Defendant's arrest, law enforcement also had sufficient probable cause to believe Defendant had committed a new offense in their presence by identifying himself as his brother and providing a false date of birth. An officer may conduct a lawful warrantless arrest based on "probable cause to believe that an individual has committed even a very minor criminal offense in his presence." *Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001). Sgt. Panattoni explained that he had asked for Defendant's birthdate specifically for confirmation purposes, based on his experience that individuals without identification may lie to conceal their true identities. ECF No. 57 at 7. In responding to these questions, Defendant paused before stating his birth year and again when asked for his current age. *Id.* at 8. Sgt. Panattoni then confirmed Defendant's true identity by reviewing his profile in a local law enforcement database, which included a photo of the same individual with whom Sgt. Panattoni had just spoken. *Id.* at 8-9.

Defendant has not established that his arrest was unlawful under the DOC bench warrant, and the United States has established that Defendant's arrest was also lawful under the probable cause requirement for a warrantless arrest.

### ii. Search of Defendant's Person

Where officers were authorized to arrest Defendant, "it was undisputedly lawful to search [Defendant] as an incident of his arrest[.]" *See Strieff*, 579 U.S. at 240-41. The firearm discovered in Defendant's jacket pocket during the search of his person was not the direct result, nor derivative of, an illegal search or seizure. *See Ngumezi*, 980 F.3d at 1290.

### iii. Search of the Truck

The Court finally turns to the warrantless search of Defendant's truck. The United States bears the burden of establishing that this search fell within an exception to the warrant requirement. *See Job*, 871 F.3d at 860. The United States contends that the truck search was lawful (1) under the automobile exception or (2) as a search incident to arrest. ECF No. 47 at 4-6. Because the United States declined to defend the search as an inventory search, the Court does not address Defendant's arguments related to the inventory search exception.

#### a. Automobile Exception

The automobile exception to the warrant requirement is premised on "[t]he 'ready mobility' of vehicles" and "'the pervasive regulation of vehicles capable of traveling on the public highways." *Collins v. Virginia*, 584 U.S. 586, 591 (2018) (quoting *California v. Carney*, 471 U.S. 386, 390, 392 (1985)). When these justifications apply, police may search a vehicle without a warrant based on "facts

ORDER – 11

giving rise to probable cause that the vehicle contains contraband." *Carney*, 471 U.S. at 392-93 (quoting *United States v. Ross*, 456 U.S. 798, 806 n.8 (1982)) (quotation marks omitted).

Defendant contends that the automobile exception should not apply because he had informed the officers that the truck was inoperable. ECF No. 41 at 25. Police had not confirmed that this was true, and Defendant's assertions carry little weight where he had already admitted to lying about his name and date of birth and was either wrong or lying about the whereabouts of his wallet and identification, whether he had any firearms on his person, and whether the pistol in his pocket was loaded. In addition, Defendant had also stated he was waiting for someone to come tow the truck to White Swan. Even if the truck was completely inoperable, it remained mobile and, according to Defendant, would soon be moved. *Cf. United States v. Navas*, 597 F.3d 492, 500 (2d Cir. 2010) (finding the automobile exception applicable to an unhitched trailer), *cert. denied*, 562 U.S. 954 (2010).

The automobile exception therefore turns on whether law enforcement had probable cause to search the truck for contraband. Sgt. Panattoni testified on direct examination that he had a concern there might be other firearms or ammunition in the truck. *See* ECF No. 54. However, the United States did not question Sgt. Panattoni about the reasons underlying this concern. There may well have been good reason for Sgt. Panattoni to believe that the truck contained other

ORDER – 12

firearm contraband, based on his training and experience, but the United States did not elicit any. The United States did not inquire of this officer nor call any other officer to testify about their training and experience with respect to the investigation of firearm-related offenses, such as their knowledge of how such offenses are commonly committed or concealed. In addition, Sgt. Panattoni testified that he did not seek a search warrant for the truck at an earlier time because he did not believe he had sufficient basis to suspect that the truck contained evidence of a crime. ECF No. 57 at 43-44. An individual officer's belief about whether probable cause exists is not determinative of whether such probable cause does, in fact, exist. However, the United States had an obligation to establish probable cause through some means, even if this was not through Sgt. Panattoni's testimony. The United States has not met its burden in establishing that the search of the truck fell within the automobile exception.

### b. Search Incident to Arrest

The Court next considers the exception for searches incident to arrest. "When an arrestee is the recent occupant of a vehicle, the arresting officer may search that vehicle if the arrestee is unsecured and within reaching distance of the passenger compartment, or if it is 'reasonable to believe evidence relevant to the crime of arrest might be found in the vehicle.'" *United States v. Johnson*, 913 F.3d 793, 801 (9th Cir. 2019) (quoting *Arizona v. Gant*, 556 U.S. 332, 343 (2009)),

ORDER – 13

*vacated on other grounds*, *Johnson v. United States*, 140 S. Ct. 440 (2019). At the time officers searched the truck, Defendant had already been removed from the truck, handcuffed, arrested, and placed in the back of a police vehicle. *See* ECF No. 41-2 at 3-4. Therefore, for this warrant exception to have applied, officers must have had reason to believe that evidence relevant to the crime of arrest might be found in the vehicle. *See Johnson*, 913 F.3d at 801.

Police had ample probable cause to arrest Defendant for falsely identifying himself to police and for unlawful possession of a firearm, in addition to the DOC warrant, by the time the truck was searched. As with the automobile exception, Sgt. Panattoni had a belief that there might be other firearms or ammunition in the truck, but the United States did not ask him to explain the reasons for this belief. Given the United States failed to elicit and establish the basis for the belief, the United States also failed to meet its burden in establishing that the search of the truck was a valid search incident to arrest.

Without an adequate showing that a warrant exception applies, the Court cannot conclude that the warrantless vehicle search was lawful.

iv. The Exclusionary Rule

The exclusionary rule requires suppression of evidence that directly results or derives from an unlawful search. *Ngumezi*, 980 F.3d at 1290. On this point, the United States also bears "the burden to show that the evidence is not the fruit of the

ORDER – 14

poisonous tree[.]" *Id.* at 1291 (quoting *United States v. Twilley*, 222 F.3d 1092, 1097 (9th Cir. 2000)) (quotation marks omitted).

Here, the United States has made no further arguments against suppression, such as attenuation or inevitable discovery. *See id.* The Court concludes that suppression of the evidence discovered in the search of the truck is required.

## CONCLUSION

The Court denies Defendant's Motion to Dismiss for the reasons set forth in *Aguilar-Cruz*, 2024 WL 2064053, given the lack of intervening case law from a court of binding authority. The Court denies Defendant's Motion to Suppress with regard to the challenges to his arrest and the search of his person, but grants the motion and excludes evidence obtained from the December 2, 2023, search of the truck.

Accordingly, **IT IS HEREBY ORDERED:**

1. Defendant's Motion to Dismiss Count 1 of Superseding Indictment, **ECF No. 43**, is **DENIED**.

2. Defendant's Motion to Suppress, **ECF No. 41**, is **DENIED in part** as to Defendant's arrest and the search of his person, and **GRANTED in part** as to evidence obtained during the search of the truck.

**IT IS SO ORDERED.** The Clerk's Office is directed to enter this Order and provide copies to all counsel.

**DATED** February 5, 2025.

*s/Mary K. Dimke*
MARY K. DIMKE
UNITED STATES DISTRICT JUDGE

ORDER – 16